GRANITE STATE INSURANCE
COMPANY, Plaintiff–
Appellant,

v.

NORD BITUMI U.S., INC., Macon–Bibb
County Industrial Authority, St. Paul
Surplus Lines Insurance Company, De-
fendants–Appellees.

No. 90–9160.

United States Court of Appeals,
Eleventh Circuit.

March 17, 1993.

Rehearing Denied April 29, 1993.

Jon B. McPhail, Mark D. Thigpen, McPhail and Marmur, P.C., Atlanta, GA, for plaintiff-appellant.

Jones Cork and Miller, Hubert C. Lovein, Jr., John Thomas Mitchell, Jr., Macon, GA, for Macon–Bibb County Indus. Authority and St. Paul Surplus Lines Ins. Co.

James Joseph Brissette, Hurt, Richardson, Garner, Todd & Cadenhead, Atlanta, GA, for Nord Bitumi U.S., Inc.

Before COX and DUBINA, Circuit Judges, and GODBOLD, Senior Circuit Judge.

PER CURIAM:

Granite State Insurance Company ("Granite State") filed this declaratory judgment action against Nord Bitumi U.S., Incorporated ("Nord Bitumi") and others seeking a determination relative to its liability under a policy issued to Nord Bitumi providing property damage liability coverage. The district court granted Nord Bitumi summary judgment, and Granite State appeals.

The facts and procedural history of this case are set forth in our previous opinion. *Granite State Ins. Co. v. Nord Bitumi U.S., Inc.*, 959 F.2d 911 (11th Cir.1992). The appeal presents three questions: (1)

whether the cooperation clause contained in the comprehensive general liability policy precludes Nord Bitumi from settling its excess liability without notice to or the consent of Granite State; (2) whether Nord Bitumi's tardy forwarding of suit papers is cured by the plaintiff's voluntary dismissal and refiling of an identical lawsuit; or, can Granite State rely on the tardy forwarding in the first suit to avoid liability even though Nord Bitumi immediately forwarded the papers served in the second suit; and (3) whether the limit of liability for property damage under Granite State's policy is $50,000 or $500,000.

We certified the first two questions to the Supreme Court of Georgia. That court has now answered them. The court held: (1) that the cooperation clause does not preclude Nord Bitumi from settling its excess liability without notice to or consent of Granite State; and (2) that Granite State cannot rely on the tardy forwarding of suit papers in the first suit to avoid liability. *Granite State Ins. Co. v. Nord Bitumi U.S., Inc.*, 262 Ga. 502, 422 S.E.2d 191 (1992). We did not certify the issue relative to the limit of liability because it "involves the application of well-settled principles of Georgia law to the facts of this case." *Granite State*, 959 F.2d at 913. We now address the issue relative to the limit of Granite State's liability.

Granite State argues that under its policy the liability limit that applies is $50,000. Nord Bitumi and the other parties argue that the policy provisions fixing the limit of liability for property damage caused by fire are ambiguous, and that under Georgia law the ambiguity should be resolved in favor of Nord Bitumi, the insured. The district court agreed with Nord Bitumi, and found the limit of liability to be $500,000 rather than $50,000.

In order to construe this policy we focus on its pertinent provisions. First, we look to the "Broad Form Comprehensive General Liability Extension" ("Broad Form"). This form adds liability coverage for property damage to property leased by the insured. With respect to the Fire Legal Liability Coverage—Real Property, the Broad Form provides:

> With respect to **property damage** to structures or portions thereof rented to or leased to the **named insured**, including fixtures permanently attached thereto, if such **property damage** arises out of fire:
>
> .      .      .      .      .
>
> The limit of **property damage** liability as respects this Fire Legal Liability Coverage—Real Property is $50,000 each **occurrence** *unless otherwise stated upon the Declarations—Part B or upon an endorsement hereto.*

(emphasis added). This language tells us that the liability limit is $50,000 for each occurrence unless the limit is stated otherwise in the Declarations–Part B. When we look at the Declarations–Part B, we find that Part B fixes the limit of liability for property damage at $500,000 each occurrence and $500,000 in the aggregate. The $50,000 limit provision in the Broad Form is part of the printed form; the $500,000 limit in Part B of the declarations was inserted with a typewriter.

Granite State argues that the declarations page does not mention the fire legal liability portion of the Broad Form, and therefore the $50,000 limit fixed by the Broad Form remains applicable. This, however, is not entirely correct. The part of the declarations page which sets the liability insurance limits lists the following coverages:

A. Bodily Injury Liab
B. Property Dam Liab
E. Medical Payments
P. Personal Injury
   Other (Specify)
   BROAD FORM COMPREHENSIVE GENERAL LIABILITY EXTENSION

Beside B appears $500,000 each occurrence; $500,000 aggregate. No figures appear beside the reference to the Broad Form.

The policy can be interpreted to fix the limit of liability at $50,000—as Granite State contends it should be. We conclude, however, that Nord Bitumi's construction— one that fixes the limit at $500,000—is also

a plausible construction. This construction is premised upon a conclusion that the limit of liability is "otherwise stated upon the Declarations—Part B...." Georgia law requires that this ambiguity be resolved in favor of the insured, Nord Bitumi. *See Garmany v. Mission Ins. Co.*, 785 F.2d 941, 945 (11th Cir.1986) ("ambiguities in an insurance contract must be construed strongly against the carrier ..." (citing *Travelers Indem. Co. v. Whalley Constr. Co.*, 160 Ga.App. 438, 287 S.E.2d 226 (1981))); *Nationwide Mut. Fire Ins. Co. v. Collins*, 136 Ga.App. 671, 222 S.E.2d 828, 832 (1975) ("Any reasonable doubt as to uncertain language will be resolved against the insurer.").

The district court properly concluded that the liability limit is $500,000.

AFFIRMED.