A99A0526. CHAMLEE et al. v. HENRY COUNTY BOARD OF EDUCATION et al.
(521 SE2d 78)

POPE, Presiding Judge.

Samuel and Linda Jane Chamlee brought suit individually and on behalf of their son Samuel Chamlee, Jr. against Jeff Ianitello and the Henry County Board of Education arising out of a car accident. The Chamlees appeal summary judgment in favor of both defendants.

On appeal from a grant of summary judgment, this Court conducts a de novo review of the record, construing the evidence and all inferences therefrom in favor of the nonmoving party. *Maddox v. Southern Engineering Co.,* 231 Ga. App. 802, 803 (500 SE2d 591) (1998); *Lane v. Spragg,* 224 Ga. App. 606 (481 SE2d 592) (1997). The record shows that Ianitello was employed by the Board as an automotive shop instructor at Henry County High School and that Samuel was a student in his class. As a part of the instruction, students got hands-on training by working on cars owned by students and teachers at the school. As a part of the class, Mike Felix, another student, or Samuel test drove a car owned by another teacher. During the test drive on public roads, Samuel was injured in an accident.

The Chamlees brought suit alleging that Ianitello negligently instructed and allowed Felix and Samuel to leave the classroom unsupervised, contrary to Board of Education rules, and that the Board failed to establish sufficient policies to protect against such an accident. The trial court granted summary judgment to Ianitello on the ground of official immunity and to the Board on the ground of sovereign immunity. The Chamlees appeal.

1. The court concluded Ianitello was performing discretionary functions when he supervised and controlled his shop class even though he may have acted in violation of specific school policies, and that he did not act maliciously or with intent to injure. Therefore he was covered by official immunity. See *Perkins v. Morgan County School Dist.,* 222 Ga. App. 831, 835 (2) (476 SE2d 592) (1996); *Wright*

*v. Ashe*, 220 Ga. App. 91 (469 SE2d 268) (1996). The Chamlees contend that because Ianitello violated several school policies, his inadequate supervision of Samuel and Felix constituted negligent performance of ministerial duties, and therefore he was not entitled to official immunity.

The Chamlees identify three school policies allegedly violated. A review of the depositions of the principal and the assistant principal shows that the Chamlees completely failed to establish that any of the three so-called policies applied to the situation where a shop teacher might allow a student to test drive a car. In fact, both the principal and the vice-principal testified that there was no policy covering use by students of vehicles in the automotive shop class, nor is there one today.

Even if it is possible to construe these policies as applying to automotive shop class, Ianitello is protected from liability by official immunity. Official immunity "protects individual public agents from personal liability for discretionary actions taken within the scope of their official authority, and done without wilfulness, malice or corruption." *Guthrie v. Irons*, 211 Ga. App. 502-503 (1) (439 SE2d 732) (1993), disapproved on separate grounds, *Gilbert v. Richardson*, 264 Ga. 744, 750 (4) (452 SE2d 476) (1994). The determination of whether an action is discretionary or ministerial must be made on a case-by-case basis, 211 Ga. App. at 504 (2), but monitoring, supervising and otherwise controlling students are considered discretionary acts. *Perkins*, 222 Ga. App. at 835 (2); *Lewis v. McDowell*, 194 Ga. App. 429, 431 (3) (390 SE2d 605) (1990). Supervision of students is considered discretionary even where specific school policies designed to help control and monitor students have been violated. *Perkins*, 222 Ga. App. at 835 (2); *Wright*, 220 Ga. App. at 93-94; see also *Guthrie*, 211 Ga. App. at 504-505 (2).

The policies at issue here all relate to the monitoring, supervision and control of students in and around the school during school hours and for extracurricular activities. As such, the implementation of those policies is discretionary in nature and therefore protected by official immunity. *Perkins*, 222 Ga. App. at 835; *Wright*, 220 Ga. App. at 93-94.

2. The Chamlees contend the court erred when it held both that the Board was immune from suit based on the doctrine of sovereign immunity and that immunity was not waived by the purchase of liability insurance pursuant to OCGA § 33-24-51.

Sovereign immunity can be waived only by a specific act of the General Assembly. Art. I, Sec. II, Par. IX. OCGA § 33-24-51 (b) provides that sovereign immunity is waived if the pertinent subdivision of the state purchases insurance as described in OCGA § 33-24-51

(a),[1] but only if the insurance "provide[s] liability coverage for the negligence of a duly authorized officer, agent, servant, attorney, or employee in the performance of his official duties" and only "to the extent of the amount of insurance so purchased." OCGA § 33-24-51 (b). The mere purchase of insurance coverage does not constitute waiver. *Woodard v. Laurens County*, 265 Ga. 404, 405 (1) (456 SE2d 581) (1995).

In this case, the Board identified two insurance agreements in response to the following interrogatory,

> Please state whether there is in existence any insurance agreement under which any . . . insurance business may be liable to satisfy part or all of any judgment which may be entered in this action, or to indemnify or reimburse payments made to satisfy any such judgment.

The Board also indicated that one of the insurers had denied coverage under its policy. Neither policy is in the record. Construing this evidence and all inferences therefrom in favor of the Chamlees requires a conclusion that the Board has purchased the insurance described in OCGA § 33-24-51 (a), i.e., insurance that covers claims arising out of the ownership, maintenance, operation, or use by the automotive shop class of any motor vehicle which is being examined or repaired by the class, regardless of whether it is owned by the school.

The next question is whether the Board's insurance policy covers "the negligence of any duly authorized officer, agent, servant, attorney, or employee in the performance of his official duties." OCGA § 33-24-51 (b). Again, without the policy and with a concession by the Board that there is some coverage, we must conclude that the identified policy or policies provide this coverage.

One question remains however. That is whether the claim arising out of the injuries in this case would be covered by the policy. Although, in determining whether there has been a waiver, similar cases speak only in terms of whether the defendant has purchased the type of insurance described in OCGA § 33-24-51 (b), ultimately

---

[1] OCGA § 33-24-51 (a) provides:

A municipal corporation, a county, or any other political subdivision of this state is authorized in its discretion to secure and provide insurance to cover liability for damages on account of bodily injury or death resulting from bodily injury to any person or for damage to property of any person, or for both *arising by reason of ownership, maintenance, operation, or use of any motor vehicle* by the municipal corporation, county, or any other political subdivision of this state under its management, control, or supervision, whether in a governmental undertaking or not, and to pay premiums for the insurance coverage.

(Emphasis supplied.)

these cases examine whether the facts of the case fall within such coverage. See, e.g., *Butler v. Dawson County*, 238 Ga. App. 808 (518 SE2d 430) (1999) (no waiver despite insurance where damages caused by county's negligence not connected with motor vehicles); *Saylor v. Troup County*, 225 Ga. App. 489, 490 (484 SE2d 298) (1997) (no waiver because injury not covered by the policy); *Lincoln County v. Edmond*, 231 Ga. App. 871, 873-874 (1) (501 SE2d 38) (1998) (no waiver because non-use of motor vehicle not encompassed in definition of policy in OCGA § 33-24-51 (a)); *Long v. Hall County Bd. of Commrs.*, 219 Ga. App. 853, 857 (2) (b) (467 SE2d 186) (1996) (no waiver because liability was not predicated on official's use of an insured vehicle, but rather on the negligent failure to prevent an inmate from escaping); *Crider v. Zurich Ins. Co.*, 222 Ga. App. 177, 179-180 (2) (474 SE2d 89) (1996) (waiver where backhoe was a "motor vehicle" within the meaning of OCGA § 33-24-51 (a)).

Accordingly, even if the defendant has purchased the type of insurance described in OCGA § 33-24-51 (a) and (b), if the *claim* does not fall within the type of coverage described in subsection (a) as limited by subsection (b), then sovereign immunity is not waived. Resolution of whether sovereign immunity has been waived necessarily requires an analysis of whether the defendant has purchased the type of insurance defined in OCGA § 33-24-51 (a) and (b) *and* whether the claim falls within that coverage.

Therefore, the final issue in this case is whether the Chamlees' claim arises out of "the negligence of a duly authorized officer, agent, servant, attorney, or employee in the performance of his official duties" such that it would be covered by the policy. To answer this question, the trial court relied on *Gilbert*, 264 Ga. at 748-749 (4); *Woodard*, 265 Ga. 404; *Long*, 219 Ga. App. at 856-857; and *Blumsack v. Bartow County*, 223 Ga. App. 392, 393-396 (1) (477 SE2d 642) (1996), for the rule that sovereign immunity is waived only if an official representative of the Board acting in his or her professional capacity was actually using, i.e., driving, the vehicle.

In *Gilbert v. Richardson*, 264 Ga. at 748-749 (4), the Supreme Court had to address whether sovereign immunity was waived by liability insurance coverage provided by the defendant county's participation in the Georgia Interlocal Risk Management Agency (GIRMA). Id. at 745. The plaintiff had been injured in an accident with a deputy sheriff who was responding to an emergency call within the scope of her employment. Id. There was no question that the accident was covered by the GIRMA insurance; the issue was whether GIRMA insurance constituted the type of liability insurance that waives sovereign immunity under OCGA § 33-24-51 (b).

In so doing, the Supreme Court began its discussion with this general statement: "OCGA § 33-24-51 provides that a county waives

its governmental immunity to the extent of the amount of liability insurance purchased for the negligence of its officers, agents, servants, attorneys, or employees arising from the *use* of a motor vehicle." (Footnotes omitted; emphasis supplied.) *Gilbert*, 264 Ga. at 748-749 (4). Reading the case as a whole, together with the statute, it is clear that the Supreme Court did not hold that waiver was limited to those situations involving use of a motor vehicle as opposed to ownership, maintenance, or operation, the three other categories described in OCGA § 33-24-51 (a). The Court was not addressing any distinction between these categories and had no reason to reach such a conclusion. The Court was either paraphrasing to mean all four categories or indicating which situation applied to the case at hand.

The Supreme Court quoted the *Gilbert* statement in *Woodard*, 265 Ga. 404. Again in *Woodard*, there was no reason to make any distinction between the four categories. The Court used the statement to explain that the plaintiff's allegation that the county negligently failed to inspect and maintain a stop sign was not connected with motor vehicles at all, either their ownership, maintenance, operation, or use. Id.

In *Long*, this Court quoted the same sentence. *Long*, 219 Ga. App. at 857 (2) (b). But similarly, *Long* involved a situation where neither the driver of the car nor the car was covered by the policy, and the alleged negligence was failure of the Department of Corrections to prevent an inmate from escaping. Id. The statement was used to show that there was no connection between the alleged negligence and any insured motor vehicle.

*Blumsack v. Bartow County* relied on *Long*, but it changed the meaning of the sentence and held that sovereign immunity is waived only if the negligent act arises from the "use" of the vehicle, as opposed to "ownership, maintenance, or operation." *Blumsack*, 223 Ga. App. at 396 (1). In *Blumsack*, a mechanic for a private repair business was involved in an accident which killed the plaintiff's decedent, while the mechanic was test-driving a county truck which was covered by insurance. Id. at 394. This Court first held that because the policy did not cover the mechanic, there could be no waiver of immunity arising out of the mechanic's alleged negligence. Id. The plaintiffs in *Blumsack* also argued that a county employee had negligently altered the vehicle, making it more dangerous, and that combined with failure to warn the mechanic of this condition, this negligence was a joint proximate cause of the injury. The county's insurance covered this negligence. Id.

The Court in *Blumsack* properly explained that "OCGA § 33-24-51 (a) gives counties the right to purchase insurance" and that "OCGA § 33-24-51 (b) describes when insurance operates to waive sovereign immunity." Id. at 393 (1). But, the plain wording of the

statute does not further limit waiver of immunity to one type of negligence (i.e., while using/driving the vehicle, as opposed to while owning, maintaining, or operating the vehicle).

*Blumsack* enforced sovereign immunity even though the county's insurance covered negligent ownership or maintenance of the vehicle by a county employee, reasoning that there could be a waiver only if the official is the person using the vehicle. Id. The Court stated that "[m]ere ownership or negligent maintenance cannot, by itself, waive sovereign immunity." *Blumsack*, 223 Ga. App. at 396 (1). Neither *Gilbert, Woodard, Long,* nor OCGA § 33-24-51 provides a basis for this conclusion.[2] As such, *Blumsack* improperly limits the law of waiver of sovereign immunity, and it must be overruled.

Our conclusion is consistent with the legislative intent of OCGA § 33-24-51. "The intent of the legislature in enacting a waiver of sovereign immunity was to allow for the compensation of parties injured by employees and agents of the state through the purchase of liability insurance where recovery is otherwise barred." *Crider v. Zurich Ins. Co.*, 222 Ga. App. at 178-179. Based on the wording of the statute and the legislative intent, we hold that OCGA § 33-24-51 (b) provides for waiver of sovereign immunity to the extent of the amount of liability insurance purchased for the negligence of duly authorized officers, agents, servants, attorneys, or employees in the performance of their official duties that arises out of either ownership, maintenance, operation, or use of a motor vehicle.

The Chamlees contend the claim is covered and thus sovereign immunity is waived, because (1) even though he was not driving it at the time of the accident, Ianitello was officially using the vehicle in connection with his automotive shop class or (2) Felix was acting as an agent of Ianitello while driving the car. With regard to agency, we find no evidence in the record that Felix or Samuel Chamlee was acting as Ianitello's agent nor any authority for the proposition that a student can be considered an agent or servant of a school. Based on the record developed so far, an issue of fact remains with regard to Ianitello's use of the car in the performance of his official duties, i.e., in connection with his teaching of automotive shop class. It was error for the trial court to grant summary judgment to the Board solely on the grounds that sovereign immunity was not waived because a government official was not personally operating the vehicle at the time

---

[2] In *Harry v. Glynn County*, 269 Ga. 503 (501 SE2d 196) (1998), the Supreme Court again used the phrase to explain that the claim was not covered by the qualifying policy because the claim had nothing to do with ownership, maintenance, operation or use of the insured motor vehicle. The claim was for negligent diagnosis and treatment of a medical condition by a paramedic. The Supreme Court was not attempting to distinguish between the four categories as was done in *Blumsack*.

of the accident.

*Judgment affirmed in part and reversed in part. Johnson, C. J., Andrews, P. J., Blackburn, P. J., Smith, Ruffin, Barnes, Miller, Ellington and Phipps, JJ., concur. McMurray, P. J., and Eldridge, J., concur specially.*

ELDRIDGE, Judge, concurring specially.

I concur as to Division 1; I concur specially in Division 2 as to the judgment only.

*Blumsack v. Bartow County*, 223 Ga. App. 392 (477 SE2d 642) (1996) is a correct interpretation of OCGA § 33-24-51, because insurance coverage alone under OCGA § 33-24-51 (a), that covers ownership, maintenance, operation, or use, is not sufficient to waive sovereign immunity. Therefore, it is a correct statement of law that the "[m]ere ownership or negligent maintenance cannot, by itself, waive sovereign immunity." Id. at 396. Such language referred to satisfaction of both OCGA § 33-24-51 (a) and (b) prior to a waiver of sovereign immunity occurring and not to the type of negligence which can give rise to liability, if there is a waiver. To waive sovereign immunity, OCGA § 33-24-51 (b) must also be satisfied when the insured motor vehicle, under the coverage, has negligence arise out of the performance of official duties by an "authorized officer, agent, servant, attorney, or employee in the performance of his official duties."[3]

> "The procurement of insurance under this statute [(OCGA § 33-24-51 (a))] does not constitute a waiver of sovereign immunity with regard to personal injury caused by the county's negligence, unless the negligence of its 'officer, agent, servant, attorney, or employee' arises from the use of a motor vehicle. (Cits.)" *Simmons v. Coweta County*, 229 Ga. App. 550, 552 (494 SE2d 362) (1997).

*Harry v. Glynn County*, 269 Ga. 503, 504 (501 SE2d 196) (1998); accord *Blumsack v. Bartow County*, supra at 396. *Blumsack v. Bartow County*, supra at 396, was cited favorably by *Simmons v. Coweta County*, supra at 552; *Harry v. Glynn County*, supra at 504, omitted this citation in its quote. *Harry v. Glynn County*, supra, was a case where the mere ownership and operation of an insured ambulance were held not to be such use as waived sovereign immunity for negligent treatment by paramedics. "Whether an event arises from the

---

[3] Most of the cases cited by the majority in Division 2 deal with a failure of "use" by an officer, agent, servant, attorney, or employee under OCGA § 33-24-51 (b) so that the second statutory element has not been satisfied, even though OCGA § 33-24-51 (a) has been satisfied by the appropriate insurance.

'use' of a motor vehicle depends largely on the circumstances, and a bright-line definition is elusive. [Cit.] What is clear, however, is that the alleged negligence must involve the use of the motor vehicle." Id. at 504. Then the opinion went on to give the quotation from *Simmons v. Coweta County*, supra, regarding "officer, agent, servant, attorney, or employee." *Blumsack v. Bartow County*, supra at 396, does not limit liability to "use" only, but OCGA § 33-24-51 (a) applies to liability arising from negligent ownership, maintenance, and operation as well. In fact, "use" has been broadly construed to include the negligent supervision of a child getting off a school bus and crossing the highway. *Roberts v. Burke County School Dist.*, 267 Ga. 665 (482 SE2d 283) (1997). As employed by the Supreme Court, "use" encompasses ownership, maintenance, operation, and "use" broadly construed of the motor vehicle. See *Gilbert v. Richardson*, 264 Ga. 744, 748-749 (4) (452 SE2d 476) (1994); see also *Harry v. Glynn County*, supra at 504; *Roberts v. Burke County School Dist.*, supra; *Woodard v. Laurens County*, 265 Ga. 404, 405 (1) (456 SE2d 581) (1995); *Simmons v. Coweta County*, supra at 552 (a), rev'd on other grounds, 269 Ga. 694 (507 SE2d 440) (1998); *Blumsack v. Bartow County*, supra at 396.

The majority's real problem is that, as written, the opinion cannot bring the use of a private vehicle driven by Mike Felix, Jr. with Samuel P. Chamlee, Jr. as a passenger, students, under OCGA § 33-24-51 (b). The automotive class required actual motor vehicles with problems for diagnosis and repair as part of the school course, which satisfied OCGA § 33-24-51 (a). As students in the automotive repair class, Felix and Chamlee were required to examine, diagnose, repair, and verify repair of the motor vehicle, which they were test driving, as part of their school work. Thus, in driving the motor vehicle, they were acting as involuntary servants of the school under the direction, supervision, and control of their teacher in the performance of his official duties. This satisfied OCGA § 33-24-51 (b). See *Simmons v. Coweta County*, supra at 553 (a state prisoner, operating a tractor, was held to be an involuntary servant within OCGA § 33-24-51 (b)).

I am authorized to state Presiding Judge McMurray joins in this opinion.

DECIDED JULY 16, 1999

*Eidson & Associates, James A. Eidson, Timothy R. Brennan*, for appellants.

*Smith, Welch & Brittain, A. J. Welch, Jr., Harper, Waldon & Craig, Russell D. Waldon, Jonathan M. Adelman*, for appellees.