## A03A0293. ROBINSON et al. v. DEKALB COUNTY et al.

(582 SE2d 156)

ANDREWS, Presiding Judge.

Thomas Earl Robinson drowned in a private lake located in DeKalb County while attempting to rescue a fisherman thrown from a capsized canoe. Mr. Robinson's surviving spouse and administrator of his estate, Kenya Robinson, brought a wrongful death action against DeKalb County and against three firefighters in their personal capacities employed by the County's Fire Services Bureau (FSB) who responded to an emergency call at the lake about the fisherman. Ms. Robinson alleged that negligent actions or failures to act by the FSB employees caused her husband's death. She appeals from the trial court's grant of summary judgment in favor of DeKalb County on the basis of sovereign immunity and in favor of the firefighters on the basis of statutory and official immunity. For the following reasons, we affirm.

The three firefighters named as defendants in the suit arrived at the lake in their fire vehicle in response to a 911 drowning call. Two men informed the firefighters that they and a third man were fishing on the lake when their canoe capsized, and that they swam back to shore but the third man was still in the lake. They said they had already made several attempts to rescue the man before the firefighters arrived but had been unsuccessful. The capsized canoe was visible about 50 to 100 feet from the shore, but the fisherman was nowhere to be seen. However, the firefighters did not rule out the possibility that he could be under the capsized canoe. One of the firefighters waded into the lake toward the canoe, but turned back after sinking into the soft bottom and encountering water over his head about 15 feet from shore. Using a hose from the fire vehicle as a lifeline, the firefighter was about to make another attempt to reach the canoe when Mr. Robinson arrived at the scene. Mr. Robinson, who lived adjacent to the lake, came to the scene to see if he could help after he heard that someone was drowning. After inquiring and being informed that the fisherman was still in the water, Mr. Robinson started to go into the lake. The firefighter making the second attempt to reach the canoe told Mr. Robinson that the water was deep and not to go into the lake. Mr. Robinson responded that he frequently swam in the lake, and he jumped in the water and swam out toward the canoe. The firefighter started swimming behind him but turned back and returned to waist-deep water when he determined that he would not be capable of swimming to the canoe and then back to shore. Mr. Robinson reached the canoe and appeared to be attempting to flip it over or look under it when he began to have trouble staying afloat and called for help. The firefighter attempted to throw the hose he was using to Mr. Robinson but was unable to reach him. Less than a

minute after calling for help, Mr. Robinson went under the surface and drowned. Mr. Robinson's body and the body of the fisherman were recovered from the lake by divers from the FSB.

1. Ms. Robinson alleged that the three firefighters caused her husband's death by negligently failing to comply with various procedures adopted by the FSB. One procedure provided that, where emergency medical care is provided by FSB officers, they should assess the scene of the medical emergency and restrict bystanders or unnecessary people from the scene. Another procedure provided that in underwater rescue or recovery operations, first arriving units (other than dive team members) should follow certain guidelines such as "look for a boat or similar craft" and "never enter the water without a lifeline." Citing these procedures, she claims the firefighters should have: (1) looked for another boat which evidence showed was on the lake bank a few hundred yards from the scene; (2) prevented Mr. Robinson from entering the water; or (3) tied a lifeline to Mr. Robinson before he entered the water.

The three firefighters moved for summary judgment on grounds that: (1) they had not committed any negligent acts; (2) they were immune from liability under OCGA § 51-1-30 (b); and (3) they were entitled to official immunity. The trial court did not address the first ground but granted summary judgment to the firefighters on the basis of the immunities asserted in the second and third grounds.

We need address only the trial court's grant of summary judgment under OCGA § 51-1-30 (b) which provides that:

> [t]he officers, members, agents, or employees of any fire department established by any county, municipality, fire district, or authority shall not be liable at law for any act or acts done while actually fighting a fire or performing duties at the scene of an emergency, except for willful negligence or malfeasance.

Even if we assume there was some evidence of ordinary negligence on the part of the firefighters, although we can discern none, we find no evidence of wilful negligence or malfeasance. Accordingly, the trial court correctly held that the three firefighters sued in their personal capacities were not liable at law for the actions they took while they were performing their duties at the scene of the emergency. OCGA § 51-1-30 (b).

2. Although DeKalb County was sued on the basis of respondeat superior for the actions of its FSB employees, the County was not entitled to assert the immunity of its employees as a defense. *Gilbert v. Richardson*, 264 Ga. 744, 753-754 (452 SE2d 476) (1994). Rather, the County moved for summary judgment on the basis of the sover-

eign immunity granted it under Art. I, Sec. II, Par. IX of the Georgia Constitution of 1983. *Woodard v. Laurens County*, 265 Ga. 404, 405 (456 SE2d 581) (1995). The immunity granted pursuant to that constitutional provision may be waived, however, to the extent a county has purchased liability insurance for the negligence of a county employee in the performance of official duties, which negligence causes liability for damages on account of bodily injury, death resulting from bodily injury, or property damage "arising by reason of ownership, maintenance, operation, or use of any motor vehicle by the . . . county." OCGA § 33-24-51 (a), (b).

Ms. Robinson contends that DeKalb County waived sovereign immunity under this section by purchasing liability insurance covering the fire vehicle used in the emergency. She argues that the fire vehicle should have been equipped with a rope of sufficient length that it could have been used to rescue her husband, and that the lack of such rope constituted negligent "maintenance" of the vehicle from which the wrongful death arose within the meaning of OCGA § 33-24-51 (a). Even if we assume some evidence of negligence in the lack of rope or other rescue equipment on the fire vehicle, we find no merit in this argument. The "maintenance . . . of any motor vehicle" as used in § 33-24-51 (a) has nothing to do with whether a rope or any other rescue equipment was present on the fire vehicle. Because Mr. Robinson's death did not arise by reason of ownership, maintenance, operation, or use of the fire vehicle within the meaning of § 33-24-51 (a), there was no waiver of immunity and DeKalb County was entitled to summary judgment.

*Judgment affirmed. Barnes and Adams, JJ., concur.*

DECIDED MAY 6, 2003.

*Robert M. Beauchamp*, for appellants.
*Charles G. Hicks, William J. Linkous III, Elizabeth B. Taylor*, for appellees.